# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **DAVID SANCHEZ,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| vs. | ) | **Case No. CIV-10-442-M** |
| | ) | |
| **H.A. LEDEZMA, Warden,** | ) | |
| | ) | |
| **Respondent.** | ) | |

## <u>REPORT AND RECOMMENDATION</u>

Petitioner, a federal prisoner appearing pro se, brings a petition seeking a writ of

habeas corpus pursuant to 28 U.S.C. § 2241. Pursuant to an order entered by Chief United

States District Judge Vicki Miles-LaGrange, the matter has been referred to the undersigned

Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B).[1] In

accordance with Rule 4 of the Rules Governing Section 2254 Cases,[2] the undersigned has

---

[1]Petitioner has filed a document entitled "Petitioner's Advisory to the Clerk of Court" [Doc. No. 5] in which he asserts that he "elects to waive consent to proceed before a U.S. Magistrate Judge's Report and Recommendation with Provisions of Title 28 USC Sec. 636." Petitioner advises that he "gives consent to proceed before Article III Judge to be decided by said U.S. District Judge." Petitioner is clearly confused with respect to the provisions of 28 U.S.C. § 636. Pursuant to § 636(b)(1)(B) a district judge may designate a magistrate judge to submit proposed findings of fact and recommendations for the disposition of "applications for posttrial relief" brought by a prisoner without consent of the prisoner. <u>See</u> <u>McCarthy v. Bronson</u>, 500 U.S. 136, 139-140 (1991) (finding that in § 636(b)(1)(B) "Congress intended to authorize the nonconsent **reference** of *all* prisoner petitions to a **magistrate**[]" including application for habeas corpus relief); <u>see</u> <u>also</u> <u>Clark v. Poulton</u>, 963 F.2d 1361 (10th Cir. 1992). Thus, Petitioner's consent is not required for the referral to the undersigned.

[2]<u>See</u> Rule 1(b), Rules Governing Section 2254 Cases in the United States District Courts (authorizing application of the rules to other habeas actions in the Court's discretion).

conducted an initial review of the petition and two simultaneously filed memoranda,[3] and for

the reasons set forth below, it is recommended that the petition be denied upon filing.[4]

By this action, Petitioner alleges that the Federal Bureau of Prisons (BOP) has

violated his right to due process under the Fifth Amendment by its categorical denial of

inmates' participation in the Residential Drug Abuse Program (RDAP), which allows the

BOP to reduce by up to one year the sentence of one who successfully completes the

program. Petition, p. 4; First Memorandum, p. 3; Second Memorandum, p. 2. Petitioner

states that he is currently housed at the Federal Correctional Institution in El Reno. Petition,

p. 2. According to Petitioner, he was convicted upon his plea of guilty to violations of 21

U.S.C. §§ 841(a) and 860 and 18 U.S.C. § 924(c) in the United States District Court for the

Western District of Texas, Case No. 08-Cr-034. Petition, p. 3. However, it appears from the

docket record of his criminal conviction, that the charge of possession of a firearm in

furtherance of a drug trafficking crime in violation of 18 U.S.C. 924(c)(2) was dismissed by

the government. United States v. Sanchez, Case No. 7:08-cr-0034-RAJ-1(docket sheet

accessed through PACER on May 20, 2010). Petitioner fails to explain whether he has been

_____

[3]Petitioner has filed a Memorandum in Support of Petitioner's Habeas Corpus Under 28 U.S.
C. Sec. 2241 [Doc. No. 3], hereinafter "First Memorandum," and a Memorandum to the Court [Doc.
No. 4], hereinafter "Second Memorandum."

[4]Because the claims made and authorities relied upon in this case are in all relevant aspects
identical to the claims and authorities asserted in two other cases filed in this Court, the report and
recommendations submitted in those cases have been substantially incorporated into this Report and
Recommendation. See Torres v. Ledezma, Case No. CIV-10-72-R (Report and Recommendation
[Doc. No. 6] and Order adopting [Doc. No. 12]) and Licon v. Ledzema, Case No. CIV-10-177-F
(Report and Recommendation [Doc. No. 8]).

admitted to the RDAP, whether he completed the program, and whether and on what basis

he was denied early release. In his petition, he simply asks for "an order from the District

Court instructing the BOP of the granting of one year early release in accordance with Sec.

3621(e)."[5] Petition, p. 5. Petitioner also requests certification of a class action "with others

petitioning for the same relief." Id. Petitioner does not provide information as to his efforts,

if any, to exhaust his administrative remedies with respect to his claim.

## I. BACKGROUND

Petitioner sets forth an abbreviated background of the regulation which forms the

basis of his petition and the undersigned has supplemented that background. Petitioner states

that in 1990, Congress directed the BOP to provide a residential substance abuse treatment

program to federal prisoners determined to have a treatable substance abuse condition.

Second Memorandum, p. 1. He further states that Congress amended the statute in 1994 to

encourage federal inmates to participate in drug abuse programs by providing an "early

release incentive." Id. Title 18 U.S.C. § 3621(e)(2)(B) provides in relevant part:

> The period a prisoner convicted of a nonviolent offense remains in custody
> after successfully completing a treatment program may be reduced by the
> Bureau of Prisons, but such reduction may not be more than one year from the
> term the prisoner must otherwise serve.

---

[5]Very broadly construing Petitioner's claims, the undersigned has assumed for purposes of
this Report and Recommendation that he has completed the RDAP and was denied early release due
to the enhancement of his drug trafficking conviction based on relevant conduct involving
possession and/or use of a firearm. See First Memorandum, p. 9.

Petitioner alleges that in 1995, the BOP published its first rule and regulation implementing the incentive-creating amendment. Second Memorandum, p. 2. The rule provided in relevant part that an inmate who completes a drug abuse program "may be eligible for early release . . . unless the inmate's current offense is determined to be a crime of violence as defined in 18 U.S.C. 924(c)(3)." 28 C.F.R. § 550.58 (1995);[6] see 60 Fed. Reg. 27692 (May 25, 1995) ("[A] crime of violence means an offense that is a felony and has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense."). In Program Statement No. 5162.02 (July 24, 1995), the BOP declared that felon-in-possession convictions under 18 U.S.C. § 922(g), and drug trafficking convictions under 21 U.S.C. § 841, were crimes of violence that would render offenders ineligible for the substance-abuse treatment early-release incentive.

In response to litigation challenging this rule and regulation, several federal courts of appeals held that neither of these offenses categorically met the "crime of violence" definition contained in § 924(c)(3), and directed the BOP to consider whether offenders convicted of these crimes were nonetheless eligible for early release as non-violent offenders in light of the general statutory definition.[7]

_____

[6]The relevant portion of 28 C.F.R. § 550.58 is now found at 28 C.F.R. § 550.55.

[7]One of these cases is from the Tenth Circuit, Fristoe v. Thompson, 144 F.3d 627, 631 (10th Cir. 1998) (joining "majority of circuits" in view that BOP's program statement definition of "nonviolent offense" violates plain language of statute and cannot be upheld).

The BOP responded by issuing an amended interim rule which relied upon the BOP

Director's <u>discretion</u> to make decisions regarding sentence reduction; the rule reflected that

the BOP had exercised its discretion and decided to deny early release under the RDAP to

offenders who were convicted of offenses involving the carrying, possession, or use of

firearms or explosives.  <u>See</u> 62 Fed. Reg. 53690 (Oct. 15, 1997); 28 C.F.R. § 550.58(a)(1).

Thereafter, in explaining the summary of changes in the 1997 interim rule, the BOP stated,

"[E]ven as the Bureau concedes that offenses related to this regulation are 'non-violent'

offenses, the implementing statute does not mandate that all 'non-violent' offenders must

receive an early release.  The statute merely indicates that the sentence may be reduced by

the Bureau of Prisons."  65 Fed. Reg. 80745, 80747 (Dec. 22, 2000).

This rule was challenged in a new round of litigation that questioned whether the

categorical exclusion was a permissible exercise of the BOP's discretion.  The circuit courts

of appeals to consider the question reached conflicting decisions,[8] and the United States

Supreme Court granted certiorari to resolve the growing split of authority.  In <u>Lopez v.</u>

<u>Davis</u>, 531 U.S. 230 (2001), the United States Supreme Court held that the BOP did have the

discretion to add an additional category of offenders who are ineligible for the early release

program:

---

[8]The Tenth Circuit Court of Appeals was one of the circuits that held the categorical exclusion of felons-in-possession from the early release program to be beyond the BOP's discretion. <u>Ward v. Booker</u>, 202 F.3d 1249, 1255 (10th Cir. 2000) (BOP's argument that the new regulation and Program Statement "do not attempt to define any statutory term, but merely express eligibility criteria clearly entrusted to the BOP's discretion" is a "distinction without a difference"), <u>abrogated</u> <u>by</u> <u>Lopez v. Davis</u>, 531 U.S. 230 (2001).

The statute provides: "The period a prisoner convicted of a nonviolent offense remains in custody after successfully completing a treatment program may be reduced by the Bureau of Prisons . . . ." 18 U.S.C. § 3621(e)(2)(B). The measure thus categorically denies early release eligibility to inmates convicted of violent offenses. The question we address is whether the Bureau has discretion to delineate, as an additional category of ineligible inmates, those whose current offense is a felony involving a firearm. 28 C.F.R. § 550.58(a)(1)(vi)(B) (2000).

. . . .

. . . Beyond instructing that the Bureau has discretion to reduce the period of imprisonment for a nonviolent offender who successfully completes drug treatment, Congress has not identified any further circumstance in which the Bureau either must grant the reduction, or is forbidden to do so. In this familiar situation, where Congress has enacted a law that does not answer the precise question at issue, all we must decide is whether the Bureau, the agency empowered to administer the early release program, has filled the statutory gap in a way that is reasonable in light of the legislature's revealed design. We think the agency's interpretation is reasonable both in taking account of preconviction conduct and in making categorical exclusions.

Id. at 238, 242 (first alteration in original) (citations and internal quotation marks omitted).

In Lopez, the Court declined to consider whether the BOP complied with the notice and comment requirements of the Administrative Procedure Act (APA) in publishing the 1997 amended interim rule. Id. at 244 n.6. The Ninth Circuit Court of Appeals later held that the 1997 interim rule did indeed fail to comply with the notice and comment requirements of 5 U.S.C. § 553(b) and (d) and was therefore invalid. Paulsen v. Daniels, 413 F.3d 999, 1004 (9th Cir. 2005). Although the BOP had by then promulgated the amended interim rule as a final rule after notice and comment, which cured that procedural defect, the Ninth Circuit declared the 1997 interim regulation "invalid as to those persons disqualified by it prior to the issuance of the final rule." Paulsen, 413 F.3d at 1008.

The next successful challenge to the categorical exclusion of prisoners convicted of

a felony offense that involved a firearm was also in the Ninth Circuit, and that decision is the

linchpin of the federal habeas petition now under consideration. Petition, p. 13 (citing

Arrington v. Daniels, 516 F.3d 1106, 1116 (9th Cir. 2008) ("The Bureau has failed to set

forth a valid rationale for its categorical exclusion rule. Section 706 of the Administrative

Procedure Act requires that it do so.")). In Arrington, the Court stated:

> Just as a rule can be invalidated for violating notice and comment requirements even if a court has determined that it represents an otherwise legitimate exercise of agency discretion, so too can a rule that survives a challenge to agency authority fail arbitrary and capricious review where the agency neglects to articulate a rational basis for the manner in which it exercises its discretion. Although the Bowen[ v. Hood, 202 F.3d 1121 (9th Cir. 2000),] and Lopez decisions recognize that there are rational explanations for the 1997 interim rule, which is identical to the Bureau's final rule in this case, they do not address whether the agency itself articulated those rationales in promulgating the final rule as required by § 706. We now consider that question and hold that the Bureau's promulgation of the final rule was arbitrary and capricious because it failed to articulate a rationale for its categorical exclusion of a class of nonviolent offenders from eligibility for early release.

Id. (emphasis added).

Based mainly on the Ninth Circuit's reasoning in Arrington,[9] the Petitioner in the case now before the Court argues that the BOP failed to provide a legally adequate rationale for its decision to categorically exclude certain offenders. First Memorandum, pp. 2-3, 6. Petitioner argues that this denial amounts to a due process violation. Petition, p. 4. The undersigned does not find Petitioner's argument persuasive.

The Arrington court found that the rationale must be articulated by the BOP in the administrative record, and not through *post hoc* explanations for its decision. See Arrington, 516 F.3d at 1112-13. The two rationales for the rule were that 1) offenders who have convictions involving firearms pose an increased risk to the public and 2) the categorical exclusion of firearm offenses provides needed uniformity in the BOP's application of the RDAP early release regulation. Id. at 1113. The Ninth Circuit found that it could not consider the first of these rationales because it did not appear in the administrative record. Id. Regarding the second rationale, the court stated that although articulated in the administrative record, it was insufficient because "[a] general desire for uniformity provides no explanation for why the [BOP] exercised its discretion to achieve consistency through the promulgation of a categorical exclusion rule." Id. at 1113-14. The Court reasoned that the

_____

[9]Petitioner also cites to Crickon v. Thomas, 579 F.3d 978 (9th Cir. 2009), in which the Ninth Circuit extended Arrington to the BOP's categorical exclusion of inmates with specific prior convictions. Id. at 987. Crickon does not appear to apply here because Petitioner does not contend that he was excluded from early release based on a prior conviction. See United States v. Chase, Crim. No. 7-83-B-W, 2010 WL 67263, at *2 n.3 (D. Me. Jan. 4, 2010) ("Crickon, however, is not directly applicable to Chase's case because it had to do with categorical exclusions based upon prior offenses. . . . The documentation submitted by Chase clearly establishes that the [BOP] precluded her from eligibility based upon her current offense of conviction and the possession of firearms, a situation analogous to Arrington rather than Crickon.").

BOP could have just as easily achieved consistency by categorically <u>including</u> prisoners with convictions involving firearms. <u>Id.</u> at 1114.

Since the Ninth Circuit decision in <u>Arrington</u>, the BOP has amended 28 C.F.R. § 550.55, effective March 16, 2009. <u>See</u> 74 Fed. Reg. 1892 (Jan. 14, 2009). The rule continues to provide that as "an exercise of the Director's discretion," inmates with a current felony conviction for an offense involving "the carrying, possession, or use of a firearm or other dangerous weapon or explosives" are not eligible for early release under the RDAP incentive. 28 C.F.R. § 550.55(b)(5)(ii) (Mar. 16, 2009). However, in promulgating the latest rule, the BOP has expanded its discussion of the rule's history to explain its rationale for denying early release to such offenders:

> The Director of the Bureau, in his discretion, chooses to preclude from early release consideration inmates convicted of offenses involving carrying, possession or use of a firearm and offenses that present a serious risk of physical force against person or property, as described in § 550.55(b)(5)(ii) and (iii). Further, in the correctional experience of the Bureau, the offense conduct of both armed offenders and certain recidivists suggests that they pose a particular risk to the public. There is a significant potential for violence from criminals who carry, possess or use firearms. As the Supreme Court noted in <u>Lopez v. Davis</u>, "denial of early release to all inmates who possessed a firearm in connection with their current offense rationally reflects the view that such inmates displayed a readiness to endanger another's life." [<u>Lopez</u>, 531 U.S.] at 240. The Bureau adopts this reasoning. The Bureau recognizes that there is a significant potential for violence from criminals who carry, possess or use firearms while engaged in felonious activity. Thus, in the interest of public safety, these inmates should not be released months in advance of completing their sentences.

> It is important to note that these inmates are not precluded from participating in the drug abuse treatment program. However, these inmates are not eligible for early release consideration because the specified elements of these offenses pose a significant threat of dangerousness or violent behavior

to the public.  This threat presents a potential safety risk to the public if inmates who have demonstrated such behavior are released to the community prematurely.  Also, early release would undermine the seriousness of these offenses as reflected by the length of the sentence which the court deemed appropriate to impose.

74 Fed. Reg. 1892, 1895 (Jan. 14, 2009).  Although this additional language is instructive, the undersigned finds that Petitioner's claim lacks merit regardless of whether he was denied early release under the rule as it existed before or after March 16, 2009.

## II.  DISCUSSION

### A.  EXHAUSTION OF ADMINISTRATIVE REMEDIES

The undersigned notes initially that Petitioner has not shown that he has exhausted his administrative remedies and nor does he argue that his failure to exhaust would be futile. Although an inmate must generally exhaust his administrative remedies as a prerequisite to seeking §2241 habeas relief,  Williams v. O'Brien, 792 F.2d 986, 987 (10th Cir. 1986), the undersigned finds it appropriate for the Court to deny a §2241 claim on the merits even if it remains unexhausted, just as it is appropriate to do with a §2254 habeas petition.  28 U.S.C. §2254(b)(2); Montez v. McKinna, 208 F.3d 862, 866 (10th Cir. 2000) ("because no credible federal constitutional claim is raised in [the] petition, we conclude it is not inconsistent with §2241 or our habeas corpus precedent to follow the policy of §2254(b)(2) in this case").

### B.  PLAINTIFF'S APA CHALLENGE TO THE BOP RULE

Petitioner contends that the BOP's regulation governing early release eligibility violates his due process rights because the BOP failed to articulate its rationale for categorically excluding inmates with certain felony convictions from eligibility for the

program.  Petition, pp. 1, 4; First Memorandum, p. 2; Second Memorandum, pp. 2-6.  The

APA provides that a reviewing court must set aside a final agency action if it is "arbitrary,

capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. §

706(2)(A).  "[T]he orderly functioning of the process of review requires that the grounds

upon which the administrative agency acted be clearly disclosed and adequately sustained,"

SEC v. Chenery Corp., 318 U.S. 80, 94 (1943), and "courts may not accept appellate

counsel's post hoc rationalizations for agency action,"  Burlington Truck Lines, Inc. v.

United States, 371 U.S. 156, 168 (1962).  However, courts "will uphold a decision of less

than ideal clarity if the agency's path may reasonably be discerned."  Bowman

Transportation, Inc. v. Arkansas-Best Freight System, Inc., 419 U.S. 281, 286 (1974).

The Arrington decision upon which Petitioner relies is obviously without binding

effect in this Circuit, but more importantly, its reasoning has been roundly criticized in

subsequent decisions from courts around the country.  These decisions include a published

decision from the Eighth Circuit Court of Appeals, Gatewood v. Outlaw, 560 F.3d 843 (8th

Cir. 2009), cert. denied 130 S.Ct. 490 (2009).  Also included are published decisions from

district courts in Maryland, Pennsylvania, and South Carolina and unpublished district court

decisions in Michigan, New Jersey, Texas, and West Virginia:  Minotti v. Whitehead, 584

F. Supp. 2d 750 (D. Md. 2008); Muolo v. Quintana, 593 F. Supp. 2d 776 (W.D. Pa. 2009),

affirmed, 345 Fed. Appx.736 (3rd Cir., 2009); Hicks v. Federal Bureau of Prisons, 603 F.

Supp. 2d 835 (D.S.C. 2009), affirmed No. 09-7205, 2009 WL 5125511 (4th Cir. Dec. 18,

2009); petition for cert. filed (U.S. Mar. 2, 2010) (No. 09-10816); Dudik v. Woodring, No.

CV 08-2761-GW (SH), 2009 WL 1014555 (C.D. Cal. Apr. 14, 2009); Sinclair v. Eichenlaub,

No. 2:07-CV-12967, 2008 WL 5235981 (E.D. Mich Dec. 15, 2008); Holloway v.

Eichenlaub, No. 08-11347, 2009 WL 416325 (E.D. Mich. Feb. 18, 2009); Neal v.

Grondolsky, No. CIV 08-2477 (NLH), 2008 WL 4186901 (D.N.J. Sept. 9, 2008); Serrano

v. Berkebile, No. 3-08-CV-1587-K, 2009 WL 81017, (N.D. Tex. Jan. 9, 2009); Johnson v.

Phillips, No. CIV 1:08CV179, 2009 WL 304744 (N.D. W. Va. Feb. 6, 2009).

Petitioner's claim lacks merit for three reasons. First, any claim that the rule violates

the APA because the "public safety" rationale does not appear in the "administrative record"

is without legal merit. As noted by the Eighth Circuit in Gatewood:

> These general principles [regarding judicial review], like 5 U.S.C. §
> 706(2)(A) itself, apply to both agency rulemaking and adjudication that is
> subject to the APA. But most Supreme Court cases applying these
> principles–such as Chenery, Burlington Truck Lines, and Bowman,–involved
> agency adjudications conducted under 5 U.S.C. §§ 556-57 (or their APA
> predecessor), which require that agency decisions be based on the
> administrative record, and define what that record must include. This case
> involves agency rulemaking under 5 U.S.C. § 553, which provides only that
> the agency shall publish notice of the proposed rulemaking, afford interested
> persons an opportunity to participate, and "incorporate in the rules adopted a
> concise general statement of their basis and purpose," § 553(c). The Supreme
> Court has repeatedly emphasized that generally speaking this section of the
> Act established the maximum procedural requirements which Congress was
> willing to have the courts impose upon agencies in conducting rulemaking
> procedures. Under § 553, an agency determination need not be made "on the
> record" unless the statute being applied so requires. Thus, the Ninth Circuit
> panel in Arrington erred when it disregarded the BOP's public safety rationale
> simply because the court could not find that rationale in an "administrative
> record" which the court never defined but seemed to limit to the BOP's
> Federal Register notice in 2000 finalizing the previously interim rule.

Gatewood, 560 F.3d at 847 (citations and internal quotation marks omitted). In this case, the notice and comment requirements are the maximum procedural requirements imposed in rulemaking procedures. Even the Ninth Circuit did not take issue with the BOP's argument that the rule now in effect did comply with these APA requirements. See Paulsen v. Daniels, 413 F.3d 999, 1008 (9th Cir. 2005) ("The subsequent enactment of the final rule can only have prospective effect.").

Second, the substantive requirements that the rule not be arbitrary, capricious, or an abuse of discretion, and that the grounds be clearly disclosed and adequately sustained are met here. Turning first to the prohibition against arbitrary administrative rulemaking, the undersigned notes the statements of the Supreme Court in Lopez:

> Having decided that the Bureau may categorically exclude prisoners based on their preconviction conduct, we further hold that the regulation excluding Lopez is permissible. The Bureau reasonably concluded that an inmate's prior involvement with firearms, in connection with the commission of a felony, suggest his readiness to resort to life-endangering violence and therefore appropriately determines the early release decision.

Lopez, 531 U.S. at 244 (emphasis added). The holding that the interim rule–identical to the final rule–is permissible and reasonable is inconsistent with a finding that the BOP's rule is arbitrary, capricious, or an abuse of discretion. The Court of Appeals for the Tenth Circuit has also recognized that "[i]n affirming the BOP's denial of a sentence reduction, the [Lopez] Court reasoned that the BOP's denial of early release to all inmates who possessed a firearm in connection with their current offense rationally reflects the view that such inmates displayed a readiness to endanger another's life." Martin v. Rios, 472 F.3d 1206, 1207 (10th

13

Cir. 2007) (internal quotation marks omitted); accord Harrison v. Lamanna, 19 Fed. Appx. 342, 342 (6th Cir. 2001) ("In Lopez, the Supreme Court expressly held that the Bureau's decision to exclude the category of inmates into which Harrison falls was a reasonable decision."); Robinson v. Gonzales, 493 F. Supp. 2d 758, 763-64 (D. Md. 2007) ("Excluding inmates with a two-level sentence enhancement for possession of a firearm is a permissible interpretation with the power to persuade. The Supreme Court's acceptance in Lopez of the BOP regulation categorically excluding inmates from early release under § 3621 if their felony offense involved carrying, possession or use of a firearm clearly supports this interpretation." (citations omitted)); Chevrier v. Marberry, No. 04-10239, 2006 WL 3759909, at *5 (E.D. Mich. Dec. 20, 2006) ("The Supreme Court concluded in Lopez v. Davis that the BOP's decision to exclude from eligibility inmates whose offenses involved firearms was reasonable and appropriate.").

Neither common sense nor Supreme Court precedent supports a conclusion that the rule is arbitrary, capricious, or an abuse of discretion. See Cushenberry v. Federal Medical Center, 530 F. Supp. 2d 908, 913 (E.D. Ky. 2008) ("[T]his Court finds that there is nothing unreasonable in the BOP's common-sense decision that there is a significant potential for violence from criminals who possess firearms.").

Additionally, "the agency's path" makes the grounds for its rule excluding persons in possession of firearms from early release despite completion of the RDAP easily discernable. See Bowman, 419 U.S. at 286. As the Eighth Circuit stated in Gatewood:

14

In these circumstances, it is appropriate to discern the reasons for the agency's final rule from the various prior interim rules, Program Statements, and litigation positions reflecting that consistent policy. The Supreme Court discerned that public safety was the basis for the BOP's exclusion of firearm offenders and concluded that the agency's rule was <u>substantively</u> reasonable in <u>Lopez</u>, 531 U.S. at 244, 121 S. Ct. 714. That, we conclude, is all 5 U.S.C. §§ 553(c) and 706(2)(A) require.

Moreover, we have no difficulty concluding, as the Court obviously did in <u>Lopez</u>, that public safety was the contemporaneous rationale for the interim and final rules, and not merely a <u>post hoc</u> rationalization by appellate counsel. The categories of offenses in the April 1996 amended Program Statement made it clear that BOP decided to exclude, not only those convicted of violent offenses, but also those whose offenses, either by inherent nature <u>or by the manner in which they were committed</u>, demonstrated a potential for violent behavior that made the inmate unsuitable for early release on public safety grounds.

<u>Gatewood</u>, 560 F.3d at 847-48 (citations omitted). The undersigned agrees that the BOP has consistently sought to implement the same substantive policy in the face of continued judicial resistance and that policy was to exclude inmates whose offenses demonstrated a potential for violent behavior that made the inmate unsuitable for early release on public safety grounds.

Third, even if the BOP's rule could not be upheld unless the grounds for it appeared in the Federal Register notices, the undersigned finds the BOP's expressed desire for uniformity and consistency is reasonable under the circumstances with which it was presented, and thus was neither arbitrary or capricious, nor an abuse of discretion. Once again, the undersigned notes the Eight Circuit's reasoning on this point:

Though it may be of only derivative importance, we also conclude that the BOP's uniformity rationale justified the amended interim and final rules . . . . By 1997, some courts had rejected the BOP's public-safety-driven

15

categories of offenders to be excluded if the offenses they committed were not "crimes of violence." When the agency concluded that public safety nonetheless justified exercising its substantial statutory discretion to exclude these offenders, it could only continue to uniformly apply its substantive policy if it published an amended rule adopting a broader discretionary basis for its categorical exclusions. Uniformity in this context was not a neutral either/or proposition. The agency had strong interests–both substantive and administrative–in applying its substantive policy decisions uniformly to its nationwide inmate population.

Gatewood, 560 F.3d at 848-49.

In summary, the BOP's rule categorically excluding offenders convicted of crimes involving the carrying, possession, or use of firearms meets the applicable APA procedural requirements and is reasonable and the grounds underlying the rule are easily discernable from the path taken by the BOP in its efforts to implement its policy. Moreover, the BOP's stated purpose of achieving uniformity in the application of its policy is neither arbitrary nor capricious. Accordingly, the undersigned recommends that the petition be denied upon filing.

## **RECOMMENDATION**

Based upon the foregoing analysis, it is recommended that the petition for habeas corpus under § 2241 be denied upon filing. Petitioner is advised of that he may file an objection to this Report and Recommendation with the Clerk of this Court on or before June 10, 2010, in accordance with 28 U.S.C. § 636 and Federal Rule of Civil Procedure 72. Petitioner is further advised that failure to file a timely objection to this Report and Recommendation waives the right to appellate review of factual and legal issues contained herein. Moore v. United States, 950 F.2d 656 (10th Cir. 1991). The Clerk is directed to send

a copy of the petition and this Report and Recommendation to the U.S. Attorney for the Western District of Oklahoma on behalf of the Respondent. This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the above captioned matter.

Dated this 21st day of May, 2010.

BANA ROBERTS
UNITED STATES MAGISTRATE JUDGE